IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Zuleika Feliú-Padilla,

Plaintiff,

v.                                    Civil No.:12-1437(DRD)

Puerto Rico Industrial
Development Company, et. al.

Defendants

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Zuleyka Feliú-Padillan ("Feliú" or "Plaintiff") filed a complaint on June 5, 2012 (Docket No. 1) against Defendants Puerto Rico Industrial Development Company ("PRIDCO"), Grace M. Díaz-Pastrana ("Díaz"), Hernan Rodríguez-Schmidt ("Rodríguez"), Wanda Pagán-Durán ("Pagán"), Ana M. Palau-Balsa ("Palau"), Carmen E. Colberg-García ("Colberg"), Ada E. Gonzalez-Mojica ("Gonzalez"), Ana T. Figueroa-Fontanez ("Figueroa"), Leida Rivera-Cruz ("Rivera"), and Julio E. Merced Vargas ("Merced") (collectively, the "Defendants"), all in their individual capacities, alleging retaliation and discrimination.

Plaintiff brings this action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of the First, Fifth and Fourteenth Amendments. Plaintiff's additional claims arise under the laws of Puerto Rico, which are attached to the instant case via the exercise of the Court's supplemental

-1-

jurisdiction pursuant to 28 U.S.C. § 1367.

## II. RELEVANT FACTUAL BACKGROUND

On November 3, 2003, PRIDCO hired Feliú as an auditor. From August 2005 until March 2006, PRIDCO initiated a reorganization which resulted in the resignation and retirement of six auditors and the Auxiliary General Auditor. After the reorganization was completed, the Internal Auditing Office at PRIDCO was occupied by Feliú, CPA Esteban Cordero-Rodríguez, and Madeline Melèndez-Ayala, a non-CPA. As Meléndez-Ayala and Cordero Rodríguez were married, PRIDCO decided to transfer Cordero-Rodríguez to another department in order to prevent any potential conflict of interests.

From April 3, 2006 to April 30, 2007, Feliú served as the Interim General Auditor. PRIDCO's Board of Directors approved a new organizational structure and Feliú was subsequently appointed as General Auditor, the position she occupied from May 1, 2007 to July 1, 2008. On July 3, 2008, Feliú was appointed Senior Auditing Officer (Subdirector) after the Defendants realized that said position had remained vacant since February of 2007. During 2008, PRIDCO continued to change its structure and Feliú's position was eventually reclassified.

Feliú further contends that she requested a reclassification of her position from Senior Auditing Officer to Auxiliary General Auditor in order to have her duties and prerogatives conform to the new structure of the office. (Docket No. 1, paragraph 5.2). Feliú asserts that in December of 2008, Jorge G. Escalera, the Director

of PRIDCO's office for Organizational Development and Human
Capital, approved her reclassification. As a result of this
reclassification, Feliú was appointed as Subdirector and was
assigned different tasks (Docket No. 1, page 6).

Feliú avers that her working scenario changed in January of
2009, just after the New Progressive Party won the November of 2008
General Elections (Docket No. 1, paragraph 5.5). Moreover, Feliú
states that on January 7, 2009, her first day of work under the new
administration, PRIDCO appointed Madeline Melèndez-Ayala as Interim
General Auditor, despite the fact that she was not a CPA. Plaintiff
contends that Melendez-Ayala's appointment was against auditing
norms, and that her old position was subordinate to that of Feliú.
In May 2009, Defendant Rivera was appointed General Auditor and
Feliú claims that she remained ignored. (Docket No. 1, paragraph
6.3)

Feliú also claims that Defendant Rivera never assigned her
with any meaningful tasks, although Feliú was second in command
(Docket No. 1, paragraph 6.4). Feliú further asserts that once the
new administration at PRIDCO settled in, she started noticing that
her requests for an audience with the company's "top brass" to
discuss her pending reclassification requests were constantly
ignored (Docket No. 1, paragraph 6.5). Additionally, Feliú states
that she issued three complaints in January, February, and April of
2009 to Defendant Díaz, the new director of PRIDCO's Office for
Organizational Development and Human Capital, but that these

complaints were never answered.

Feliú subsequently filed a complaint before the Anti-Discrimination Unit in July of 2009, alleging that Defendants Díaz and González responded by offering false information about the organizational plans of the agency. In responding to Plaintiff's complaint, Defendants Díaz and González allegedly claimed that the Office's current organization chart was the one adopted in February of 2007; that the September of 2008 reorganization was never implemented by PRIDCO's Board of Directors; and that it was unknown when the September of 2008 reorganization would be implemented. (Docket No. 1, Paragraphs 6.9.1, 6.9.2, 6.9.3).

Feliú further posits that she asked for a voluntary dismissal of her complaint without prejudice in July of 2009 as a result of the false representations given by the Defendants. Feliú also states that she found out that the 2008 reorganization was in effect while preparing an audit worksheet assigned to her by Defendant Rivera. Furthermore, Feliú asserts that she then estimated her working hours under a column reserved for the Auxiliary General Auditor and that she also made a note addressing the problem with the reorganization plans. (Docket No. 1, Paragraph 6.12).

Feliú claims that when she returned the worksheet to Rivera, he modified Feliú's working hours so they would correspond to a lesser position. Feliú also contends that Rivera deleted from the worksheet the observations she made on the discrepancies regarding

the organization plans. Plaintiff further asserts that in October of 2009, she received a letter from Defendants regarding their intent to dismiss her.

After several other incidents, Feliú also claims that the Defendants conspired to prosecute her for non-existent ethics violations. Plaintiff alleges that Defendant Díaz, acting as head of PRIDCO's Internal Ethics Committee, issued a referral to Puerto Rico's Government Ethics Office. In said referral, she stated that Feliú unlawfully engineered her appointment as Senior Auditing Officer.(Docket No. 1, paragraph 8.1).

Furthermore, Feliú alleges that the ethics referral was concocted behind closed doors without giving her any notice or opportunity to defend herself. Feliú was prosecuted for four alleged ethics violations; however these charges were all dismissed for lack of proof in March of 2012. Plaintiff further contends that her office was accessed several times without her consent and that the incident was notified to Defendant Merced. Plaintiff avers that no other office was similarly accessed.

Plaintiff also claims that she was made accountable for the security of her office and that she was required by Defendant Vargas to prepare an inventory that included each and every document in her private office. (Docket No. 1, paragraph 9.10). Recognizing performing such an inventory would be an onerous task involving the physical handling and reading of thousands of documents, "Plaintiff asked Defendant Merced-Vargas to reconsider

what was clearly an abusive, unprecedented and punitive directive devised and oriented exclusively towards Plaintiff." (Docket No. 1, paragraph 9.11). This request was denied.

Plaintiff alleges that she was assigned to perform two other time consuming endeavors on April 13 and June 27 of 2011; these allegedly resulted in an official finding by the State Insurance Fund ("SIF") that Feliú developed a permanent physical disability.(Docket No. 1, paragraphs 9.13, 9.15).

Finally, Feliú avers that after she took seventy-eight days off to rest pursuant to SIF's orders, Defendants discounted those days from Feliú's sick leave. Feliú states that she has been challenging Defendants' practice of discounting these days, but that these requests have not been addressed.

### III. PROCEDURAL HISTORY

On November 1, 2012, Defendants filed a motion to dismiss (Docket No. 35) alleging that several of Plaintiff's Section 1983 claims are time-barred. Defendants further assert that Plaintiff failed to meet the requirements of a *prima facie* case of political discrimination. Defendants contend that Plaintiff has failed to allege that they belong to any political party, much less to an opposing party. Moreover, Defendants posit that they did not have any knowledge of Plaintiff's opposing political affiliation. Defendants aver that all the damages resulting from the work related injury are covered by the State Insurance Fund, thus, they

are immune to any damages claim arising from it.

Defendants further contend that Plaintiff failed to state a claim under Law 80 for failure to state a *prima facie* case of retaliation, and that Plaintiffs potential recovery under Article 1802 of the Civil Code of Puerto Rico is barred by Law 80. Lastly, Defendants posit that Plaintiff failed to state a claim under the Fifth Amendment as it is inapplicable in this case. They also claim that Plaintiff failed to state a claim under the Fourteenth Amendment as she has not been deprived of any property interest. Hence, Defendants request that the Court denies the injunctive relief requested by Plaintiff.

On December 7, 2012, Plaintiff opposed the motion to dismiss (Docket No. 39). Plaintiff alleges that her claims are not time-barred and that the Statute of limitations is tolled by extra-judicial claims. Furthermore, Plaintiff asserts that the Defendants' conduct has been a continuous and unceasing discriminatory pattern, thus constituting a continuing violation and a hostile work environment. Feliú also states that she was discriminated based on her political beliefs, and that she constantly suffered a systematic neglect and demotion of duties and prerogatives.

### IV. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under
Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff
must "provide the grounds of his entitlement [with] more than
labels and conclusions." *See* Ocasio-Hernandez v. Fortuño-Burset,
640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement
to relief a complaint must contain enough factual material 'to
raise a right to relief above the speculative level on the
assumption that all the allegations in the complaint are true (even
if doubtful in fact).')(quoting Twombly, 550 U.S. at 555) (citation
omitted).  Thus, a plaintiff must, and is now required to, present
allegations that "nudge [his] claims across the line from
conceivable to plausible" in order to comply with the requirements
of Rule 8(a). Id. at 570; *see e.g.* Ashcroft v. Iqbal, 556 U.S. 662
(2009).

When considering a motion to dismiss, the Court's inquiry
occurs in a two-step process under the current context-based
"plausibility" standard established by Twombly, 550 U.S. 544, and
Iqbal, 556 U.S. 662 . "Context based" means that a Plaintiff must
allege sufficient facts that comply with the basic elements of the
cause of action. *See* Iqbal, 556 U.S. at 677-679 (concluding that
plaintiff's complaint was factually insufficient to substantiate
the required elements of a *Bivens* claim, leaving the complaint with
only conclusory statements). First, the Court must "accept as true
all of the allegations contained in a complaint[,]" discarding

legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. 678) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative

explanation." Id. at 679-80 (citing Twombly, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. 679); see Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); see Ocasio-Hernandez, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v.

Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well.  Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011).  "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not."  Id. at 596; see Iqbal, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The Twombly and Iqbal standards require District Courts to "screen[] out rhetoric masquerading as litigation.").

## V. ANALYSIS

### A. Statute of Limitations

Before analyzing Plaintiff's Section 1983, the Court must determine whether it has jurisdiction to hear them. Section 1983 does not contain a statute of limitations period; therefore, a federal court must borrow the forum jurisdiction's limitation period. Nieves v. McSweejey, 241 F.3d 46, 51 (1st Cir. 2001).

In cases brought under Section 1983, we apply Puerto Rico's statue of limitations period for tort actions which is one year. See Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. Sec. 5198 (providing a one-year prescriptive period for tort actions);

Ruiz-Sulsona v. Univ. of P.R., 334 F.3d 157, 159 (1st Cir. 2003). "In most instances, the day of accrual occurs 'when the Plaintiff knows, or has a reason to know, of the injury on which the action is based.'" Id. (citing Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992)). Therefore, in order for this Court to hear Plaintiff's claims, the action must have been commenced within one year of Plaintiff's knowing, or having reason to know, of the injury on which her actions are based. Id. (citing Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992)). Accordingly, the action must have been commenced within one year of Plaintiff's knowing, or having reason to know, of the injury on which her actions are based.

Three of the main reasons for tolling the statute of limitations include: (1) the continuing violation doctrine, (2) equitable tolling, and (3) filing extrajudicial claims. We examine each of these in turn.

## 1. *Continuing Violation Doctrine*

The continuing violation doctrine constitutes an exception to the statute of limitations that allows an employee to seek damages for claims that would otherwise be time-barred if they are deemed part of an ongoing series of discriminatory acts and there is "some violation within the statute of limitations period that anchors the earlier claims." O'Rourke v. City of Providence, 235 F 3d. 713, 730 (1st Cir. 2010). In determining whether there has been a continuing violation, courts focus on three factors: (1) the subject matter of

the discriminatory acts and whether the acts are sufficiently similar that there is a substantial relationship between the otherwise untimely acts and the timely acts; (2) whether the acts are isolated and discrete or whether they occur with frequency, repetitively, or continuously; and (3) whether the acts are of sufficient permanence that they should trigger an awareness of the need to assert one's rights. Id. at 731; see DeNovellis v. Shalala, 124 F.3d 298, 309 (1st Cir. 1997)("A court evaluating a 'continuing violation' argument must distinguish between a continuing violation and the continuing effects of a prior, yet discrete and no longer existent, discriminatory act."); Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 401 (1st Cir. 1990)("Before a plaintiff can reach back and recover for a series of acts outside the limitations period, he must first prove a substantial relationship between the acts.").

In order for the continuing violations doctrine to be applicable, a discriminatory act must have "anchored" the earlier alleged discriminatory acts within the one-year statute of limitations period. In determining whether such "anchoring" occurred, the Court must look at the three-factor test set forth in O'Rourke. See O'Rourke, 235 F 3d. at 731. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 113 (2002).

In the instant matter, Plaintiff only brings forth two timely

events: her purported ethics violation accusation dismissed on March 19, 2012 and her work-related injury suffered on June 27, 2011. Plaintiff's remaining claims are clearly untimely as they occurred prior to 2011.

Since Plaintiff brought this action in June 5, 2012, in order for her untimely claims to be properly anchored by a timely claim, Plaintiff needs to demonstrate that the untimely events are substantially similar to the timely event, which occurred between June 5, 2011 and June 5, 2012.[1]

In the present controversy, the Court finds that Plaintiff's untimely claims are not saved by the continuing violation doctrine. Plaintiff's untimely claims are either related to the fact that Defendants never answered her internal complaints; Plaintiff was required to work more than ten hours; Plaintiff was required to perform an onerous inventory of every document in her office; or a letter of intent to dismiss that she received from Defendants. None of these untimely claims relate to the purported ethics violation accusation. Simply, there is no connection between them. They are entirely discrete and separate events that do not relate to one another. Accordingly, the continuing violation doctrine is inapplicable to rescue Plaintiff's untimely claims and these claims

---

[1] Plaintiff's last reclassification claim addressed to PRIDCO was filed before the Anti-Discrimination Unit in July of 2009, which is clearly prior to June 5, 2011, and is therefore untimely. Plaintiff's last two untimely retaliatory events date back to October of 2009 when she received a letter from Defendants regarding their intent to dismiss her; and December of 2010 when she was required to work for more than ten hours.

are no longer actionable.[2]

## 2. Equitable Tolling Claim

The First Circuit has stated that in order for a Plaintiff to succeed in an equitable tolling claim he "must show excusable ignorance of the statute of limitations caused by some misconduct of the defendant." Benitez-Pons v. Commonwealth Of Puerto Rico, 136 F.3d 54, 61 (1st Cir. 1998) (citing Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 407 (1st Cir. 1990)). The First Circuit further notes that "equitable tolling is unavailable where a party fails to exercise reasonable diligence." Id. Courts weigh five factors in assessing claims of equitable tolling: (1) the lack of actual notice of the filing requirement; (2) the lack of constructive notice of the filing requirement; (3) the diligence in pursuing one's rights; (4) the absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the filing requirement. Id. (citing Kale v. Combined Ins. Co. of America, 861 F.2d 746, 752 (1st Cir. 1988)).

Equitable tolling suspends the running of the limitations period "if the plaintiff, in the exercise of a reasonable diligence, could not have discovered information essential to his claim." Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 680 (1st Cir. 2011)(citing Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008)). "The tolling proponent must establish

---

[2]Accordingly, the Court will later examine Plaintiff's ethics violation accusation as an isolated event.

that the extraordinary circumstances beyond his control prevented a timely filing or that he was materially misled into missing the deadline." Ortega, 661 F.3d at 680. Additionally, the First Circuit has emphasized that the grounds for tolling the limitations period is more expansive in suits against private parties than against the government. Id. at 679.

In Ortega, the First Circuit held that the plaintiff's claims had been equitably tolled as a result of him being materially misled by the defendant. Id. at 680. In that case, the defendant was required by federal statute to provide the plaintiff with notice of his rights to bring suit under ERISA, and the time frame for doing so, when the Defendant denied his request for benefits. Id. The plaintiff was materially misled and affected when he did not receive notice of the limitations period believing that he had fifteen years to file a lawsuit. Id. Furthermore, the plaintiff's misimpressions were not a result of any lack of diligence on his part, as the defendant has a statutory duty to advise the plaintiff of his right and failed to do so. Id.

In the present controversy, Plaintiff avers that in July of 2009, based on false information given to her by Defendants, she voluntarily dismissed a complaint she had submitted to the Anti-Discrimination Unit of Puerto Rico's Department of Labor and Human Resources ("ADU"). However, Plaintiff admits that more than a month later, she discovered that the information given to her by Defendants was false. Thus, even crediting Plaintiff's assertion

that Defendants misled her, she could have quickly rectified this information as it only caused a one month delay. This one month delay did not hinder Plaintiff from timely filing the instant complaint in District Court.   Accordingly, the Court cannot conclude that Defendants provided Plaintiff with any materially misleading information. Simply, no misrepresentation from Defendants prevented Plaintiff from timely bringing her cause of action.  Furthermore, Plaintiff does not allege the existence of any extraordinary circumstance that could have prevented her from doing so.  Moreover, unlike in Ortega, Defendants had no duty to inform Plaintiff of the limitations period or another other obligation to provide Plaintiff with any kind of notice.

It would be prejudicial to Defendants for the Court to authorize Plaintiff to bring a claim that is clearly time-barred and that has not been properly tolled by an extrajudicial claim. As the First Circuit has expressed, "[t]he statutory limitation of actions protects . . . a very concrete particular interest: the interest of an individual not to be exposed to old claims, of which memory has been lost, because silence has created an objective and reasonable confidence that the right or power would not be exercised." Rodriguez-Narvaez v. Nazario, 895 F.2d 38, 43 (1st Cir. 1990)(citing Díez Picazo, *La Prescripción en el Código Civil*, (1964), p. 56).   Recognizing this laudable public policy objective, and determining that Plaintiff has failed to demonstrate that she acted with the requisite "due diligence" to invoke

-17-

equitable tolling, the Court concludes that the equitable tolling is inapplicable to the present litigation.

### 3. Extrajudicial Claims

In addressing extrajudicial claims, the First Circuit has stated that "a letter sent by a tort plaintiff to the tortfeasor, complaining of the tortious conduct and demanding compensation, is an extrajudicial claim that, if timely, interrupts the prescription of the cause of action in tort." Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 114 (1st Cir. 2009).

An extrajudicial claim includes "virtually any demand formulated by the creditor with the only limitations that it must be made by the holder of the substantive right (or his legal representative), that it must be addressed to the debtor or passive subject of the right and that it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit." Rodriguez-Narvaez, 895 F.2d at 44.

In Santana, the First Circuit further added that not all letters will serve to toll the limitations period, as the Puerto Rico Supreme Court has limited the tolling effect of an extrajudicial letter to situations where the letter is "identical" to a subsequently filed complaint. Santana, 579 F.3d at 114 (citing Cintrón v. Estado Libre Asociado de P.R., 27 P.R. 582 (1990)). For this identicality requirement to be satisfied:

> First, the extrajudicial letter and subsequent complaint must seek the same form of relief. Second, the causes of action asserted must be based on the same substantive

claims as asserted in the extrajudicial letter. Lastly, provided that other Puerto Rico tolling statutes do not rescue the claims on other grounds, they must be asserted against the same defendants in the same capacities; new defendants should not be added.

Santana, 579 F.3d at 114 (internal quotations omitted).

Puerto Rico law requires sufficient detail "to put defendant on notice of the general nature of their claims." Id. at 116. "Tolling is effective with regard only to identical causes of action. The statute of limitations is not tolled for all claims arising out of the same facts." Narvaez, 895 F.2d at 43. Extrajudicial letters "must do something more than merely inform or remind, otherwise it would not constitute the 'unmistakable manifestation of one, who threatened with the loss of his right, expresses his wish not to lose it.'" Kery v. Am. Airlines, Inc., 931 F. Supp. 947, 953 (D.P.R. 1995)(citing Galib-Frangie v. El Vocero de Puerto Rico, 95 JTS 71, 923 (1995).

In Narvaez, the First Circuit addressed whether an extrajudicial claim had the effect of tolling the statute of limitations. In holding that it did not, the Circuit Court expressed that:

> At no time is any mention made of the political discrimination allegations that would be central to her suit. No claim for damages is made, no legal action is announced, no Section 1983 suit is implied. It is clear then that her professed extrajudicial claim did not seek the same relief ultimately sought in the subsequent lawsuit.

Id. at 46 (internal citations omitted).

In also holding that an extrajudicial claim could not toll the statute of limitations, the First Circuit expressed in Andino:

-19-

> . . . it is not at all clear that plaintiff expected the Municipality to pay the compensatory damages, as the text of the appeal complains almost exclusively about the conduct of Rivero-Albino. In any event, the lack of precise and specific identity between the claims put forth in the administrative appeal and the relief sought in this lawsuit precludes recognition of the administrative appeal as an extrajudicial claim.

Andino-Pastrana v. Municipio De San Juan, 215 F.3d 179, 181 (1st Cir. 2000).[3]

In the present controversy, Plaintiff contends that she submitted several internal complaints to Defendants "denouncing political discrimination and asking PRIDCO to address her claims." (Docket No. 1, Paragraph 7). However, Plaintiff has not provided the Court with the actual internal complaints and thus, does not offer enough information for the Court to reach a correct determination on whether the internal complaints served to toll the statute of limitations. It would be far too speculative for the Court to reach a determination on this issue without be able to examine the internal complaints themselves. The Court simply cannot determine if the internal complaints were based exactly on the same claims that Plaintiff brings herein and if they were directed towards the same Defendants included in the instant action based

---

[3]All of the above cited requirements are restated in the case of Diaz de Diana v. A.J.A.S., 10 P.R. Offic. Trans. 602, 607-608 n.1, 110 P.R. Dec. 471 (1980). Diaz de Diana also remarks that the tolling exceptions must be interpreted restrictively.  However, the Court of Appeals has noted some tension with this statement and other leading cases as "the Puerto Rico Supreme Court has also stated that extrajudicial claims should be analyzed in [their] 'totality and in a liberal fashion.'" Santana-Castro, 579 F.3d at 115 (citing Pitts v. United States, 109 F.3d 832, 835 n.4 951 (1st Cir. 1997)) ((citing Zambrana Maldonado v. Estado Libre Asociado de P.R., 129 D.P.R. 740, 1992 WL 755000 (P.R. 1992)).  Notwithstanding, Diaz de Diana constitutes an excellent restatement of the general tolling rules applicable to Puerto Rico.

upon the information provided by Plaintiff.[4]

Therefore, the Court concludes that Plaintiff's Internal Complaints in the form of letters, memorandums, and emails do not satisfy the identicality requirement for an extrajudicial claim to toll the statute of limitations.

## B. Claims Under Section 1983

Section 1983 does not create any independent substantive rights; Section 1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors.[5] *See* Albright v. Oliver, 210 U.S. 266 (1994)("Section 1983 . . . is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred . . . ."); Lockhart-Bembery v. Sauro, 498 F.3d 69, 74 (1st Cir. 2007); Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617 (1st Cir. 2000). Section 1983 merely provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere. Oklahoma City v. Tuttle, 471 U.S. 808 (1985).

When reviewing the imposition of liability under Section 1983,

---

[4]Additionally, Plaintiff alleges that she filed numerous internal complaints against the company's "top brass" announcing that she had been the target of political discrimination. (Docket No. 1, paragraph 7). This indictment of the company's "top brass" is insufficient to constitute enough information to establish a "specific identity" between Plaintiff's internal complaints and the claims contained herein.

[5]Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress."

we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Gutierrez-Rodríguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989)(citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). The traditional definition of acting under color of state law requires that the defendant in a Section 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988).

To establish personal liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S.166 (1985)(citing Monroe v. Pape, 365 U.S. 167, 81 (1961)). More is required in an official-capacity action however, for a government entity is liable under Section 1983 only when the entity itself is a "'moving force'" behind the deprivation. Id. The Graham Court further states that "it is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity." Id. Moreover, "unless a distinct cause of action is asserted against the entity itself, the entity is not even a party to a personal-capacity lawsuit and has no opportunity to present a defense." Id.

## C. First Amendment Retaliation Claim

-22-

The First Amendment protects the right of freedom of speech and the right for individual to freely associate. "The First Amendment [also] shields public employees from 'political' firings, unless, of course, 'partisan considerations are a legitimate requirement for the position in question.'" Rodríguez v. Municipality of San Juan, 659 F.3d 168, 176 (1st Cir. 2011)(quoting Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594 (1st Cir. 2011)); Rutan v. Republican Party, 497 U.S. 62, 75 (1990); Welch v. Ciampa, 542 F.3d 927, 938-939 (1st Cir. 2008); Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).

To set forth a *prima facie* case of First Amendment retaliation, a plaintiff must show: (1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that her political affiliation was a substantial or motivating factor for the adverse employment action. Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 239 (1st Cir. 2010).

It is critical to differentiate between high-level policymaking government employees and non-policymaking government employees, as only the latter are protected from an adverse employment action on behalf of the government under the First Amendment. *See* Welch, 542 F.3d at 938. In Puerto Rico, there are two types of government employees: (1) career employees and (2) confidential or trust employees. Morales-Santiago v. Hernandez-

Perez, 488 F.3d 465, 469 (1st Cir. 2007)(citing P.R. Laws Ann. tit. 3, § 1349 (2003 & Supp.). Confidential or trust employees are those that participate in policymaking and can be hired or fired simply because of their political affiliations; however, if a career employee suffers an adverse employment action it must be for just cause, and political affiliations cannot play a role in the decision-making process. Figueroa v. Alejandro, 597 F.3d 423, 430 (1st Cir. 2010) (citing Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir. 2009)).

In the instant matter, Plaintiff was, at all relevant times, a career government employee, meaning that her political affiliation could not be a substantial or motivating factor in any adverse employment action taken by the government.

We turn our analysis to the four prong First Amendment retaliation test. Plaintiff does not meet the first prong requiring that Plaintiff and Defendants have opposing political affiliations. In her complaint, Plaintiff alleges that she has a preference for the Popular Democratic Party but fails to allege that Defendants were members of the New Progressive Party. The second prong, requiring Plaintiff to allege that Defendants were aware of her political affiliations, is similarly not met in pending matter. Nowhere in the complaint does Plaintiff alleges that the Defendants knew that she was affiliated with the Popular Democratic Party. If there are no facts to suggest that Defendants knew of Plaintiff's political affiliations, then the Court cannot presume that

Defendants' purportedly adverse actions were politically motivated.

With regards to the third prong, Plaintiff must show that she suffered an adverse employment action while working for the government. Plaintiff alleges that Defendants failed to promote her to the position of General Auditor as a result of her political affiliations and that when she complained to her supervisors they retaliated against her. Plaintiff claims that the Defendants initiated an ethics investigation against her, that they forced her to work longer hours causing injury, and that they intended to dismiss her. All of these allegations are sufficient to show that she suffered an adverse employment action, thereby satisfying the third prong.

The final prong requires a plaintiff to allege that her political affiliation was a substantial or motivating factor for the adverse employment action. Here, Plaintiff has failed to do so. There are no facts in the complaint showing that any of the alleged decisions made by the Defendants were substantially motivated by Plaintiff's political aspirations. Accordingly, as Plaintiff failed to satisfy three of the four prongs, her First Amendment retaliation claim must be dismissed.[6]

---

[6]The Court notes that Plaintiff admits that Defendant's adverse actions began in September of 2008. Plaintiff avers that in September of 2008: "PRIDCO once again approved a reorganization of the office . . . . These constant changes in the office's structure placed Plaintiff in an odd situation, since her duties and prerogatives at the office were those of a sub-director, and hence her post as Senior Auditing officer needed to be reclassified in accordance to the new organization." (Docket No. 1, Paragraphs 5, 5.1). Thus, it is evident that Plaintiff's work-related problems did not begin when the new administration took office in January of 2009.

### D. Puerto Rico Law 80 Claim

"Generally speaking, Law 80 requires employers to compensate at-will employees who are discharged without just cause." Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 254 (1st Cir. 2013) (citing P.R. Laws Ann. tit. 29, § 185a). However, Law 80 does not contain a waiver of sovereign immunity, Silva v. Universidad de Puerto Rico, 817 F. Supp. 1000 (D.P.R. 1993), and individual supervisors cannot be held liable under Law 80. *See* Mandavilli v. Maldonado, 38 F. Supp. 2d 180, 205 (D.P.R. 1994) (citing Flamand v. American Int'l. Group Inc., 876 F. Supp. 356, 364 (D.P.R. 1994)). Accordingly, the Court concludes that Plaintiff may not seek redress under Law 80 on account of the government agencies' sovereign immunity. Therefore, Plaintiff's claims under Law 80 are hereby dismissed with prejudice.

### E. State Law Causes of Action

Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's remaining state law claims. "[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" Figueroa v. Alejandro, 597 F.3d 423, 431 n.10 (1st Cir. 2010)(*quoting* 28 U.S.C. § 1367(c)(3)). *See* Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1176 (1st Cir. 1995)("As a general principle, the unfavorable disposition of a plaintiff's federal

claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."); *see also* <u>Rojas-Velàzquez v. Figueroa-Sancha</u>, 676 F.3d 206, 213 (1st Cir. 2012) ("Because the only federal claims in this suit were properly dismissed . . . the court's decision not to exercise supplemental jurisdiction over the pendent claims cannot seriously be questioned."). Although "[i]n an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims," the usual case will point toward declining to exercise jurisdiction over the remaining state-law claims when the Court balances the factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity.  <u>Id.</u> at 1176; *see also* <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

Consequently, the Court **GRANTS** Defendant's motion to dismiss with respect to Plaintiff's federal law claims but dismisses Plaintiff's remaining state law claims without prejudice.

## VI. Conclusion

For the reasons stated herein, Defendants' motion to dismiss (Docket No. 35) is hereby **GRANTED**. Therefore, Plaintiff's claims for violations of her First, Fifth and Fourteenth Amendment rights, First Amendment Retaliation are hereby **DISMISSED** with prejudice. Plaintiff's Law 80 claims are also hereby **DISMISSED** with prejudice.

However, any of Plaintiff's remaining state law claims are hereby **DISMISSED** without prejudice. Judgment shall be entered accordingly.

      **IT IS SO ORDERED.**

      In San Juan, Puerto Rico this 9th day of August, 2013.

                            /s/ DANIEL R. DOMÍNGUEZ

                            DANIEL R. DOMÍNGUEZ
                            U.S. District Judge